UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALAIN ARMAND, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  No. 4:24-CV-974 HEA |
| | ) |
| PRISCILLA MOXAM ARMAND, | ) |
| | ) |
| Respondent. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Respondent Priscilla Moxam Armand's First and Second Motions for Stay pending appeal. Petitioner Alain Armand filed a response in opposition to the First Motion for Stay, to which Respondent filed a reply.[1] The First Motion for Stay is fully briefed and ripe for review. For the reasons that follow, Respondent's First and Second Motions for Stay will be denied.

### *Background*

On April 30, 2025, the Court found in favor of Petitioner Alain Armand on his Verified Petition for Return of Children to France, which was filed against Respondent Priscilla Moxam Armand pursuant to the 1980 Hague Convention on

---

[1] Both Petitioner Alain Armand and Respondent Priscilla Moxam Armand are proceeding in this matter *pro se* without the assistance of counsel. Respondent is an attorney licensed to practice law by the State of Florida. Respondent is appearing personally on behalf of herself. She is not admitted to practice in the United States District Court for the Eastern District of Missouri. Petitioner has a law degree from Howard University but is not a licensed attorney.

the Civil Aspects of International Child Abduction (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 9001, *et seq.* In an Opinion, Memorandum and Order dated April 30, 2025, the Court found Petitioner had shown, by a preponderance of the evidence, that Respondent had wrongfully removed her and Petitioner's minor children, A.A. and A.J.A., from France and retained them in the United States. (ECF No. 47). The Court further found that Respondent had not proven that there is an affirmative defense preventing the return of the minor children to their country of habitual residence, France. In in a separate Order of Return dated April 30, 2025, the Court ordered Respondent to return A.A. and A.J.A. to France on or before June 16, 2025. (ECF No. 46). The Court also ordered Respondent to file with the Court written notice detailing the planned itinerary for the children's return, including the specific date, flight details, times, and port of entry into France, which she did. Respondent filed notice that she and the children had been booked on a flight leaving St. Louis on June 15 and arriving in Paris, France on June 16, 2025. (ECF No. 48, Ex. 2).

On May 19, 2025, Respondent filed a Notice of Appeal. (ECF No. 49), and on May 23, 2025, she filed her first Motion to Stay, in which she asks the Court to stay the Return Order pending her appeal. On June 6, 2025, Respondent filed a second Motion to Stay, again asking the Court to stay the Return Order pending her appeal.

## *Discussion*

The Supreme Court has held that in considering whether to stay a return order entered under the Hague Convention, courts should apply the four traditional stay factors:

(1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (internal quotation marks omitted). "In every case under the Hague Convention, the well-being of a child is at stake; application of the traditional stay factors ensures that each case will receive the individualized treatment necessary for appropriate consideration of the child's best interests." *Id.* The Supreme Court, however, has cautioned lower courts against routinely granting stays in Hague Convention cases, stating that stays "would conflict with the [Hague] Convention's mandate of prompt return to a child's country of habitual residence." *Id.* at 178.

The Court now turns to each of these four factors.

   1. *Respondent's likelihood of success on the merits*

The Court finds that Respondent is unlikely to succeed on the merits of her appeal. This was not a close case. For the reasons stated at length in the Court's Opinion, Memorandum and Order, Petitioner clearly met his burden of showing, by a preponderance of the evidence, that France was A.A.'s and A.J.A.'s country of habitual residence as of the date Respondent removed the children and flew to the United States in April 2024 without Petitioner's knowledge or consent.

As to the affirmative defenses raised by Respondent, she failed to show by clear and convincing evidence that returning A.A. and A.J.A. to France would subject them to a grave risk of physical or psychological harm, nor did Respondent produce any evidence to support a defense of objection by mature child.

In her First Motion to Stay, Respondent argues that she is likely to succeed on appeal because the Court did not conduct an *in camera* interview of the children. She also faults the Court for failing to notify her, a *pro se* litigant, that she was required to call an expert witness. Finally, she argues that there remains an issue as to whether the Court was required to appoint counsel for the children, who she contends object to returning to France.

Respondent is proceeding in this matter on her own behalf, but she is a licensed attorney. In fact, she is a litigator, who has litigated cases in federal court on behalf of her clients. The Court held an evidentiary hearing in this matter, but

4

Respondent did not bring the children to the hearing. Further, at the hearing, Respondent was allowed to present her case and enter evidence into the record. She was not limited in this regard. Respondent did not request at the hearing that the children be interviewed by the undersigned or that she otherwise be allowed to present evidence of the mature child objection. Further, the Court was not required to notify Respondent that an expert was required, because she was not required to call an expert. Expert testimony is but one type of admissible evidence Respondent could have used to support her defenses. Finally, Respondent did not request, and the Court is unaware of any requirement in the Hague Convention or under other controlling authority that the Court appoint counsel for the children. In sum, the Court believes that Respondent's likelihood of success on the merits is very low. This factor weighs against a stay.

*2. Irreparable harm to Respondent*

In her first motion, Respondent does not expressly argue that she would be irreparably injured absent a stay. But in her second motion, she states that a French lawyer has informed her that she faces "imminent arrest" upon arrival in France, because of the criminal proceedings brought by Petitioner. (ECF No. 59). Respondent contends that Petitioner did not disclose this information during the hearing. The Court does not agree. Petitioner testified at the hearing that he had filed a criminal complaint against Respondent for kidnapping the children, and he

5

submitted an exhibit to support his testimony. (ECF No. 36 at 80). Petitioner further testified as follows: "So it's very well possible that there is going to be a conviction for kidnapping because in France, removing one's child from their habitual residence, outside of the Hague Convention, without the acquiescence of both parents is a crime punishable by fines and jail time." (*Id.*) Respondent has known since at least the time of the hearing that she is facing criminal charges and possible arrest in France.

Petitioner also argues that the Court's order of return "clearly contemplates that I return to France with the children." (ECF No. 59 at 1). Again, the Court does not agree. The Court believed, based on the evidence presented in this case, that Respondent would likely want to accompany and/or return with the children to France, and the Court's Order of Return contemplates this possibility. There is nothing in the Court's Order, however, that would require Respondent to return to France. Respondent is directed to return A.A. and A.J.A. to France, but she may stay in the United States.

Respondent also argues that if the children are returned to France, and she were to prevail on appeal, obtaining their return to the United States would be uncertain and difficult. The Court finds that argument without merit. The Supreme Court has cautioned against routinely granting stays in Hague Convention cases. "If losing parents were effectively guaranteed a stay, it seems likely that more would

6

appeal, a scenario that would undermine the goal of prompt return and the best interests of children who should in fact be returned." *Chafin*, 568 U.S. at 179. There is nothing in the record to suggest Petitioner would not comply with a return order should Respondent win her appeal, an outcome that the Court find is unlikely. Further, as the Supreme Court wrote in *Chafin v. Chafin*, federal courts "will continue to have personal jurisdiction over [Petition], may command [him] to take action even outside the United States, and may back up any such command with sanctions. *Id.* at 175. The return of A.A. and A.J.A. to France will not render Respondent's appeal moot and will not deprive Respondent of the opportunity for appellate review. *Id.* at 180 (holding that the return of a child to his or her country of habitual residence does not render moot an appeal of the return order).

The Court finds that absent a stay, Respondent is facing the same irreparable harm Petitioner has endured since she unlawfully removed the children from France in April 2024 – separation from her own children and the uncertainty of when they will be reunited. For the above reasons, the Court finds that this factor weighs only slightly in favor of a stay.

  3. *Substantial injury the other parties interested in the proceeding*

Petitioner, A.A., and A.J.A. are the other interested parties in this litigation. Respondent argues A.A. and A.J.A. will be harmed absent a stay. She contends that they will be forced to live in the house of a stranger with no extended family nearby

7

and with their father, who is struggling financially. Respondent also argues that maintaining the *status quo* will not inflict significant damage on Petitioner because he will be able to speak with the children over the phone and is welcome to come to Missouri to visit.

Respondent's suggestion that Petitioner will not suffer significant harm if the Court maintains the *status quo* is specious and disingenuous. Further, it is contrary to the purpose of the Hague Convention, which is to secure the prompt return of children to their place of habitual residence. Respondent created the *status quo*. A.A. and A.J.A. are living in the United States with their mother and not with their father in France because Respondent's wrongfully removed the children from their place of habitual residence without their father's knowledge or consent. Petitioner has been living without his children for over a year. Petitioner has been, and continues to be, harmed by Respondent's decision to keep his children away from him. Granting a stay would lengthen that separation and worsen the harm.

As for potential harm to the children, the Court found that Plaintiff failed to establish that either they will face a grave risk of harm if they are returned to France or that they object to returning to France. In her motions to stay, Respondent is once again critical of Petitioner's living situation. The fact that Petitioner may have a less desirable living situation than Respondent, because he has less income and currently lives with his neighbor, does not establish that the children will face significant harm

8

in the absence of a stay. A.A. and A.J.A. would also be harmed by continuing their long separation from their father and their place of habitual residence. Balancing the harms in light of the purposes of the Hague Convention, the Court finds that this factor weighs against entering a stay.

　　4.　　*Public Interest*

Finally, the Court considers the public interest. *Chafin*, 568 U.S. at 179. Respondent argues that public interest weighs in favor of a stay so that she can pursue appellate review of novel legal issues that impact *pro se* litigants. As discussed above, the children's return to France would not moot or deprive Respondent of an appeal. *Id.* at 180. Petitioner argues that in light of the Hague Convention's preference for the prompt return of children to their places of habitual residence, the public interest weighs against granting a stay. The Court agrees with Petitioner and finds that this factor weighs against entering a stay.

### *Conclusion*

In sum, three of the relevant factors weigh against granting a stay in this case, and one weighs slightly in favor of a stay. After weighing all four factors in light of the parties' arguments and the facts of this case, the Court finds that no stay is warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Respondent's First and Second Motions for Stay pending appeal are **DENIED**.  [ECF Nos. 55 and 59]

Dated this 11th day of June, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE