**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAIN ARMAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-974 HEA |
| | ) | |
| PRISCILLA MOXAM ARMAND, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>OPINION, MEMORANDUM AND ORDER</u>

This matter is before the Court on Petitioner Alain Armand's Verified Petition for Return of Children to France, which was filed against Respondent Priscilla Moxam Armand pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 9001, *et seq.* For the reasons that follow, the Court finds that denial of the Verified Petition for Return is warranted based on the mature child affirmative defense.

### *Background*

In an Opinion, Memorandum and Order dated April 30, 2025, the Court found in favor of Petitioner and against Respondent on his Verified Petition for Return of Children to France. (ECF No. 47). The Court found Petitioner had shown, by a preponderance of the evidence, that Respondent had wrongfully removed her and

Petitioner's minor children, A.A. and A.J.A., from France and retained them in the United States.  The Court further found that Respondent had not proven that there is an affirmative defense preventing the return of the minor children to their country of habitual residence, France.  In a separate Order of Return dated April 30, 2025, the Court ordered Respondent to return A.A. and A.J.A. to France on or before June 16, 2025, and Judgment was entered on June 11, 2025. (ECF Nos. 46 and 62).

On May 21, 2025, Respondent filed an appeal to the Court's Order of Return. (ECF No. 53). On or about June 16, 2025, while the appeal was pending, Respondent returned with the children to France.  A.A. and A.J.A. have been living with Respondent in France since June 2025.  According to Petitioner, he has had less than two hours of in-person contact with the children since they returned to France.

In an Opinion dated March 9, 2026, the Eighth Circuit found the Court erred in that it did not address Respondent's request that the children be interviewed, either by the Court *in camera* or by a forensic psychologist, to determine if they object to return for purposes of the "mature child" defense. (ECF No. 69). The Eighth Circuit vacated the Court's order and remanded "with the instruction that the court first address [Respondent]'s request for an interview of the children for purposes of establishing a 'mature child' defense prior to ruling on the merits of the petition. *See Custodio v. Samillan*, 842 F.3d 1084, 1089 (8th Cir. 2016) (noting that ruling on this

2

defense is a "fact-intensive determination that is based in part on the court's personal observations of the child")." (*Id.* at 2-3).

On May 26, 2026, following remand and the issuance of the mandate, the Court interviewed A.A. and A.J.A.  The two teenagers remained in France, and the interviews were conducted over Zoom. The Court interviewed A.A. and A.J.A. separately and outside the presence of their parents or counsel. While the children were physically located at Respondent's apartment, she was in a separate room during the interviews. Prior to the interviews, the parties were allowed to submit proposed questions for the undersigned to consider asking the children.  After the interviews, a transcript was prepared, and both sides submitted briefs in support and in opposition to application of the mature child defense. Having interviewed the children and after consideration of the parties' briefs, the Court will now take up whether Respondent has established the mature child defense.[1]

---

[1]The Petition for Return and Respondent's mature child defense have not been mooted by the children's return to France. *Chafin v. Chafin*, 568 U.S. 165, 180 (2013) (return does not render a Hague Convention case moot where "there is a live dispute between the parties over where their child will be raised, and there is a possibility of effectual relief for the prevailing parent."). Here, the Armands continue to dispute where their children should be raised, and there is a possibility either Petitioner or Respondent is entitled to relief. Consequently, the Court will consider the mature child defense and whether A.A. and A.J.A. object to being in France.

Further, the Court's findings of fact in its Opinion, Memorandum and Order dated April 30, 2025, are unchanged and will not be repeated here.  Further, the Court's legal conclusion that Petitioner has established all elements of his *prima facie* case by the preponderance of the evidence remains unchanged, as does the Court's legal conclusion that Respondent has not established the grave risk defense.

## *Legal Standard*

The Hague Convention was adopted to address the problem of international child abductions that resulted from domestic disputes. *Golan v. Saada*, 596 U.S. 666, 670 (2022). It provides authority for the physical return of a child who has been wrongfully removed or retained from their habitual residence in violation of a parent's custodial rights.  *Id.*  "It is the [Hague] Convention's core premise that 'the interests of children ... in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence.'" *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020) (quoting Hague Convention Preamble). "To that end, the [Hague] Convention ordinarily requires the prompt return of a child wrongfully removed or retained away from the country in which [he or ]she habitually resides." *Id.* (citing Hague Convention art. 12). "The removal or retention is wrongful if done in violation of the custody laws of the child's habitual residence." *Id.*  The Hague Convention is limited to the issue of whether a child should be returned to his or her country of habitual residence to enable the courts of that country to determine issues of custody.

The United States Congress implemented the Hague Convention through ICARA.[2] 22 U.S.C. §§ 9001 *et seq.*  ICARA permits a parent seeking relief under

---

[2]France is a signatory to the Hague Convention as of July 1, 1988.  *See* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited Apr. 28, 2025).

the Hague Convention to file a petition in federal court for return of a child under the age of 16. *Golan*, 596 U.S. at 671. "Under ICARA, the party petitioning for the child's return bears the burden of establishing by a preponderance of the evidence that the child was wrongfully removed or retained." *Id.* at 671–72 (citing § 9003(e)(1)).

To establish a *prima facie* case for return of a child, a petitioner must show that: "(1) immediately prior to removal or retention, the child habitually resided in another Contracting State; (2) the removal or retention was in breach of the petitioner's custody rights under the State's law; and (3) the petitioner was exercising those custody rights at the time of the removal or wrongful retention." *Custodio v. Samillan*, 842 F.3d 1084, 1088 (8th Cir. 2016) (quotations omitted). If a petitioner establishes a *prima facie* case, the child must be "promptly returned unless one of the narrow exceptions set forth in the [Hague] Convention applies." *Id.* at 1089. "Absent a finding that an exception applies, a child determined to be wrongfully removed or retained must be 'promptly returned' to the child's country of habitual residence." *Golan*, 596 U.S. at 672 (quoting 22 U.S.C. § 9001(a)(4)).

One of these narrow exceptions to return is the "mature child defense." *Dubikovskyy v. Goun*, 54 F.4th 1042, 1048 (8th Cir. 2022). To establish the mature child defense, a party must show by a preponderance of the evidence: (1) that the child has "attained an age and degree of maturity at which it is appropriate to take

account of [his or her] views" and (2) "that the child objects to being returned." *Dubikovskyy*, 54 F.4th at 1048; *Custodio*, 842 F.3d at 1089 (quoting the Hague Convention, art. 13).  Whether a child has reached a sufficient degree of maturity is a "fact-intensive determination" that should be based, at least in part, on the Court's personal observations of the child. *Custodio*, 842 F.3d at 1089.  Further, "[i]f a child is found to be mature, the reasons the child objects to being returned are immaterial." *Dubikovskyy*, 54 F.4th at 1048. A child's objection to return "can be the sole reason that a court refuses to order return." *Custodio*, 842 F.3d at 1089, but "[a] stricter standard [ ] applies when a child's views are the sole reason for denying repatriation." *Dubikovskyy*, 54 F.4th at 1048.

### *Discussion*

A.A. is 15 years old and will turn 16 on August 9, 2026.[3] A.J.A. is 13 years old and will turn 14 on October 23, 2026. The undersigned interviewed the two teenagers on May 26, 2026, and was impressed by their poise and composure. Both children are intelligent, well-spoken, and appear to be very self-aware.  Each of them spoke English fluently and present as native speakers. Each appreciated the nature

---

[3]The Hague Convention does not set out a minimum age requirement for the mature child defense, although courts often apply the mature child defense to children in this general age range. *See, e.g., Custodio v. Samillan*, No. 4:15-CV-1162 JAR, 2015 WL 9477429, *at *4* (E.D. Mo. Dec. 29, 2015), *aff'd,* 842 F.3d 1084 (8th Cir. 2016) (exception applied to 15-year-old and 14-year-old); *de Silva v. Pitts*, 481 F.3d 1279, 1286–87 (10th Cir. 2007) (exception applied to 13-year-old); *Man v. Cummings*, No. CV 08-15-PA, 2008 WL 803005, at *2, *4 (D. Or. Mar. 21, 2008) (same).  The Hague Convention does not apply to children who have attained the age of 16.  *Custodio*, 842 F.3d at 1088.

of these proceedings, and each one understood what was being asked of them. Based on the demeanor and responses during each interviews, as well as the performance of each at school, outside activities, and the parents' own depictions of their children, the Court finds that A.A. and A.J.A. are mature for their respective ages.  In short, the Court finds Respondent has established by a preponderance of the evidence that A.A. and A.J.A. have attained an age and degree of maturity such that it is appropriate for the Court to take their views into account.  The Court now turns to what their views are and whether they object to being in France.

A.A. made clear in her interview that she objects to being in France for a number of reasons. A.A. expressed frustration with French education system because upon return, she was placed in a higher grade level, which hurts her grades. (ECF No. 94 at 7:14–19).  She also stated that because she moved to France, she had to give up a scholarship to an elite private school in Missouri. (*Id.* at 10:5–19).  She believes going to a French school will make it more difficult for her to attend an American college or university. (*Id. at* 14:17–21).  A.A. also expressed that she is not comfortable being around or talking with her father, and she does not like being in France, because she does not "want to know that [her] dad can just take a car ride and reach [her]." (*Id.* at 17:8–10). A.A. further expressed that she does not want to live in France, because she is unable to see her extended family, and she has "a support system" in "St. Louis with [her] aunt." (*Id.* at 14:15–18). A.A. indicated that

she believes her future is in the United States, and she wants to be close to her extended family in St. Louis. (*Id.* at 17:8–10).

A.J.A. also objects to being in France. Like his sister, A.J.A. does not like the school system in France, and he believes that he has better educational opportunities in the United States. (*Id.* at 20:20; 28:6-13). He also objects to living in France because he misses his friends in Missouri. (*Id.* 24:18–20). A.J.A. also reported that although he likes soccer and was able to play in Missouri, he cannot play soccer in France because he is not comfortable with his father driving him, and he has no other transportation option. (*Id.* 22:14–22).

The Court finds Respondent has established by a ponderance of the evidence that A.A. and A.J.A. object to living in France. Their objections are not merely preferences. *Dubikovskyy*, 54 F.4th at 1048 (distinguishing between an objection and a preference or "generalized desire"). These two teenagers do not want to live in France and each clearly described the limitations and obstacles presented to each if residence there was continued.

Petitioner argues that the children's objections to living in France reflect Respondent's undue influence and, therefore, the Court should give the objections diminished weight. In support of his argument, Petitioner points to the fact that the children have been in the Respondent's exclusive care for over two years, and during this period, neither child has voluntarily lived with or visited him. Further, since

returning to France, A.J.A. has only encountered his father once, when Petitioner came to the door unannounced, and A.A. has refused to see him and closed the door on him when he came to the apartment.

Petitioner also cites to the fact that A.A. and A.J.A. spoke with him on the phone more regularly when they were in Missouri, but since returning to France in June 2025, he has had only a handful of telephone calls with his children, and since the end of September 2025, he has had none. Petitioner blames the lack of telephone calls on Respondent. He theorizes that Respondent has not facilitated telephone calls between him and his children, because she is now living in France and is out of reach of the Court's control.

Finally, Petitioner argues Respondent's undue influence over the children is evident in text messages she made to a family friend. Petitioner submitted into evidence screenshots from WhatsApp where Respondent wrote the following:

All I'm hearing from my kids is that they want to go home.

There are three people in France who do not want to be here.

Forcing us to be here is going to breed resentment.

We will each do our time until 5 years is over and he will never hear from us again.

He wants things on his term only. Meaning he wants to come pick them up alone. I don't trust that.  Kids are not comfortable.

I'm sad for him you know.  Because the kids don't miss him. He already lost them because of his own actions. He doesn't get it.

9

(ECF No. 102, Ex. 2 at 6-7).

The Court declines to find that Respondent has exercised undue influence over A.A. and A.J.A.  It is uncontroverted that the children have lived with their mother since April 2024.  It is also undisputed that Petitioner and Respondent do not get along, and that Respondent is of the opinion that Petitioner is moody, hot-tempered, and unstable. But the fact that A.A. and A.J.A. have lived with Respondent for two years, and that she has expressed her opinion of Petitioner to the Court, a family friend, and the Petitioner is not dispositive as to the issue of whether she has asserted *undue* influence over the children. There is no evidence that Respondent has expressed her unfavorable opinions of Petitioner in A.A. or A.J.A.'s presence, or that she has spoken ill of Petitioner to the children.

As the undersigned has had the opportunity to observe A.A. and A.J.A during their interview the children appeared calm, and stress free. They spoke freely and openly. Their facial expressions gave no indication of being controlled or coached in their expression of their objections. During the interviews, the Court asked both A.A. and A.J.A. whether Respondent spoke to them about their testimony. Both responded that she told them generally what the hearing was about and instructed them to tell the truth. (ECF No. 94 at 11:2–5; 23:6–7).  During their interviews, neither teenager gave any indication that Respondent had spoken negatively about Petitioner to him or her.

10

The Court also does not find persuasive Petitioner's argument that A.A.'s and A.J.A.'s reluctance to see or speak with him is evidence of Respondent's undue influence. During their interviews, both teenagers told the Court that they do not feel comfortable around their father. More specifically, A.A. indicated that in the past, Petitioner has physically and emotionally abused her and her brother, which is supported by the underlying record in this case.[4]  And A.J.A. stated that he does not feel comfortable having his father pick him up from soccer practice. In addition, both children stated in their interviews that they object to living in France and want to return to Missouri, and they lay the blame for having to live in France on their father. A.J.A. stated that he has asked his father whether he could stay in Missouri or return there, and his father has refused his requests.

Having closely observed the children during their interviews and considering other evidence in the record, the Court finds it more likely than not that A.A. and A.J.A. have formed independent opinions of Petitioner based on their past

---

[4]While the Court found in its Opinion, Memorandum, and Order dated April 30, 2025, that Petitioner's past conduct did not rise to a level of severity such that the grave risk of danger defense applied, the Court did find that Petitioner used corporal punishment on both children, that he often yells and has a domineering parenting style, and that he has berated and insulted A.A. about her appearance. Petitioner does not dispute that A.A. is uncomfortable around him, but he does dispute that he is estranged from A.J.A. He points to the fact that on June 23, 2026, he delivered to A.J.A. a large screen monitor for his video games. According to Petitioner, A.J.A. came to the door, accepted the gift, and spent two minutes with him. Petitioner's evidence from this one short visit, including his selfie photos with his son, does not change the Court's finding that A.J.A. is angry with and uncomfortable being around his father.

11

experiences with him, and they have stopped having telephone conversations with him or seeing him because: (1) they are uncomfortable with him because of his past behavior, and (2) they are angry with him because they do not want to live in France. The Court rejects Petitioner's contention that Respondent is to blame for the children's lack of telephone calls.[5]

Finally, the text messages between Respondent and a family friend do not support the finding of undue influence. They do not reveal any inappropriate conduct Respondent directed to the children.  In addition, A.A. and A.J.A. were not parties to the messages, and there is no evidence that they have seen them.  In fact, the Court finds that the texts support application of the mature child defense. In her text messages, Respondent writes that A.A. and A.J.A. do not want to be in France and want to return to Missouri, that they are not comfortable with Petitioner and do not miss him, and that forcing the children to remain in France will cause the children to resent their father. Respondent's text messages regarding the children's unfavorable feelings toward their father and their objections to living in France are

---

[5]Petitioner is also wrong to suggest that Respondent is no longer under this Court's jurisdiction because she moved to France. The parties to this suit remain subject to the Court's jurisdiction and are bound by the Court's orders. *Chafin*, 568 U.S. at 175 ("the U.S. courts continue to have personal jurisdiction over [a party to a Hague Convention case], may command [that party] to take action even outside the United States, and may back up any such command with sanctions.").

12

consistent with the statements A.A. and A.J.A. made to the Court during their interviews – statements that the Court finds were genuine and sincere.

In sum, the Court finds by a preponderance of the evidence that A.A. and A.J.A. have attained an age and degree of maturity such that it is appropriate for the Court to take their views into account. The Court also finds by a preponderance of the evidence that A.A. and A.J.A. both object to living in France. Further, A.A.'s and A.J.A.'s testimony expressed their own independent views and was not the result of Respondent's undue influence. In conclusion, application of the mature child defense is warranted for both A.A. and A.J.A., and the Court denies the Verified Petition for Return.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Alain Armand's Verified Complaint and Petition for Return of Child Under the Hague Convention is **DENIED**.

Dated this 7th day of August, 2026.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

13

14